IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JUSTIN J. ALLEE,           )
      Petitioner,        )    Case No. 7:21-cv-00594
v.                     )
                      )
J.C. STREEVAL, WARDEN,  )    By: Michael F. Urbanski
      Respondent.     )    Chief United States District Judge

## MEMORANDUM OPINION

Justin J. Allee, a federal inmate proceeding pro se, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Allee claims that he was denied due process during two prison disciplinary proceedings that resulted in the loss of good conduct time. The case is presently before the court on the respondent's motion for summary judgment. ECF No. 3. The motion has been fully briefed and is ripe for disposition. See ECF Nos. 4, 7, and 10. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

## I.     BACKGROUND

Allee is incarcerated at USP Lee in Pennington Gap, Virginia, where he was charged with possessing a dangerous weapon on two occasions in 2021. Allee lost good conduct time as a result of both disciplinary actions. The court will summarize the pertinent facts relating to each action in turn.[1]

### A.    Incident Report No. 3465880

In Incident Report No. 3465880, USP Lee staff member J. Robbins charged Allee with possessing a dangerous weapon on January 14, 2021. ECF No. 4-3 at 1. Robbins reported that

---

[1] The facts summarized below are taken from the respondent's documentary evidence and are undisputed unless otherwise noted.

he had conducted a random search of Allee's cell on that date and that he had found "a metal homemade weapon approximately 7 inches in length, grey in color and sharpened to a point, . . . concealed in the back right corner of the cell behind the metal frame of the inmate bunk." Id.

Staff member Kenyon delivered a copy of the incident report to Allee on January 14, 2021, and advised him of his rights. Id. at 1, 3. Allee indicated that he understood his rights and declined to make a statement. Id. at 3. Kenyon referred the incident report to the Unit Disciplinary Committee ("UDC"). Id.

Allee appeared before the UDC on January 15, 2021. Id. at 2. At that time, Allee "requested [a representative] and witnesses." Id. He complained of retaliation and submitted a written statement. See id. ("[Inmate] stated 'this is retaliation.'"); see also ECF No. 4-4 at 1 (asserting that "[t]his weapon is a vindictive plant in retaliation for filing administrative remedies"). The UDC referred the matter to a Disciplinary Hearing Officer ("DHO").

Prior to the disciplinary hearing, staff member McClellan provided Allee an Inmate Rights at Disciplinary Hearing form. ECF No. 4-5 at 1. Allee signed the form on January 15, 2021, acknowledging that he had been advised of his rights. Id. Allee also completed and signed a Notice of Disciplinary Hearing form in which he indicated that he wished to have a staff representative and two witnesses. ECF No. 4-6 at 1. Allee noted that one witness would testify regarding an "administrative remedy" and that the other would testify as to a "setup." Id.

The DHO conducted a disciplinary hearing on February 24, 2021. ECF No. 4-7 at 1. Allee requested that Unit Manager C. Kemmerer appear as his staff representative. Id. The

DHO's report indicates that Kemmerer appeared at the hearing and provided the following statement: "He wanted me here to state that he has filed an Administrative Remedy requesting an emotional support animal." Id.

After Allee acknowledged that he had received a copy of the incident report and understood his rights, the DHO read Section 11 of the incident report to Allee and asked him whether he admitted ownership of the metal weapon described in the report. Id. In response, Allee said, "I had just cleaned the room the day before and there was no weapon in there. I don't let nobody live with me that carries a knife and I don't carry one myself." Id. at 1–2. Allee then presented a written statement for the DHO's consideration. Id. at 2.

Allee's cellmate appeared as a witness before the DHO at Allee's request. Id. His cellmate testified that the weapon did not belong to either one of them and that Allee had "filed an Administrative Remedy." Id. Although Allee also requested that Counselor M. McClellan appear as a witness to verify that he had filed administrative remedies, the DHO determined that such testimony was repetitive and, therefore, that McClellan would not be called as a witness. Id.

At the conclusion of the hearing, the DHO determined that the greater weight of the evidence supported the finding that Allee had committed the prohibited act of possessing a dangerous weapon. Id. at 3–4. The DHO found the reporting officer's statement in the incident report to be more credible than the statements provided by Allee and his cellmate. Id. at 3. The DHO also reviewed a photograph of the metal object at issue and determined that the photograph was consistent with the description in the incident report and that the object qualified as a dangerous weapon. Id.

The DHO also considered Allee's written statement claiming that the weapon had been planted in the cell by prison staff as an act of retaliation. Id. The DHO noted that Allee's allegations of retaliation had been referred to the Warden's office for investigation and that a Special Investigative Agent had determined that there was no credible evidence to support the allegations. Id.

The DHO concluded the report by noting that neither Allee nor his cellmate claimed ownership of the weapon and that the DHO had no reason to believe that either inmate was more or less culpable than the other. Id. The DHO emphasized that Allee and his cellmate shared the responsibility of maintaining the common areas of their assigned cell free of contraband at all times. Id. The DHO ultimately found that Allee and his cellmate "share[d] the responsibility for the seven inch sharpened weapon" that was discovered by the reporting officer. Id.

The DHO imposed the following sanctions: disallowance of 41 days of good conduct time, 15 days of disciplinary segregation, and a 180-day loss of commissary privileges. Id. at 4. Allee was advised of his appeal rights, and a USP staff member delivered a copy of the DHO's report to Allee on June 9, 2021. Id.

## B.    Incident Report No. 3489959

In Incident Report No. 3489959, Officer S.K. White charged Allee with possessing a dangerous weapon on April 2, 2021. ECF No. 4-8 at 1. White reported that he had conducted a search of Allee's cell on that date and that he had found a "prison made metal weapon measuring 6 ½ inches tapering to a sharpened point . . . inside the bottom locker, which was secured with a combination lock and had [Allee's] property inside." Id.

Staff member D. Smith delivered a copy of the incident report to Allee on April 3, 2021, and advised him of his rights. Id. at 1, 3. Allee indicated that he understood his rights and declined to make a statement. Id. at 3. Smith noted that Allee did not request any witnesses at the time of the investigation. Id. Smith referred the incident report to the UDC. Id.

Allee appeared before the UDC on April 4, 2021. Id. at 2. The UDC Chairman noted that Allee did not request a staff representative or witnesses, and that Allee stated, "I acknowledge the bottom locker is mine." Id. The UDC referred the matter to a DHO for a hearing. Id.

Prior to the disciplinary hearing, staff member McClellan provided Allee an Inmate Rights at Disciplinary Hearing form, which Allee refused to sign. ECF No. 4-9 at 1. Allee also refused to sign the Notice of Disciplinary Hearing form. ECF No. 4-10 at 1. The form indicates that Allee requested three witnesses: Unit Manager Kemmerer, Officer White (the reporting officer), and Officer Thomas Id. Allee indicated that all of the requested witnesses would testify regarding a "discussion on 3-11-21 concerning admin[istrative] remedies." Id.

The DHO initially attempted to conduct a disciplinary hearing on April 14, 2021. ECF No. 4-11 at 3. The DHO suspended the hearing after Allee complained of staff misconduct and submitted a written statement alleging that the incident report was "another attempt [of] retaliation for filing complaints against USP Lee . . . . " Id.; see also ECF No. 4-13 at 1. The DHO referred Allee's allegations to the Warden's office. On May 4, 2021, the DHO received notice that Special Investigative Agent J. Canfield had conducted an investigation and that it revealed "no indication of staff misconduct." ECF No. 4-11 at 3. Accordingly, "the discipline process resumed." Id.

Allee appeared before the DHO again on May 12, 2021. Id. at 1. After Allee acknowledged that he had received a copy of the incident report and understood his rights, the DHO read Section 11 of the incident report to Allee and asked him whether he occupied the bottom or top locker in cell 230. Id. Allee informed the DHO that the bottom locker belonged to him. Id. However, he denied ownership of the metal weapon found in the bottom locker. Id. at 1–2.

Although Allee requested that Unit Manager Kemmerer, Officer Thomas, and Officer White appear as witnesses, the DHO determined that their proposed testimony concerning administrative remedies was not relevant to the charge of possessing a weapon. The DHO also determined that Officer White's knowledge of the incident was adequately summarized in Section 11 of the incident report. Id. at 2. Consequently, the DHO declined to call these staff members to appear at the hearing. Id.

At the conclusion of the hearing, the DHO determined that the greater weight of the evidence supported the finding that Allee had committed the prohibited act of possessing a dangerous weapon. Id. at 3–4. The DHO found the reporting officer's statement in the incident report to be more credible than the statement provided by Allee. Id. at 3. The DHO also considered "the evidence photograph of the weapon, and the fact [that Allee was] assigned to and admitted occupying the lower locker at the time of the incident." Id. at 3–4. The DHO emphasized that "[t]he weapon was located inside the bottom locker, which was secured with a combination lock and had property which belonged to [Allee] inside." Id. at 4.

The DHO also rejected Allee's allegations of retaliation and explained the reasons for doing so. Id. The DHO emphasized that Allee had not "provide[d] sufficient evidence to

convince the DHO that [he] did not control the weapon" or that staff members had "conspired to falsely accuse [him] of this misconduct." Id.  The DHO noted that Allee had been assigned to the same cell for nearly four weeks prior to the incident, providing Allee ample time to search the cell for contraband and report any discrepancies to prison staff. Id. The DHO also noted that a review of Allee's disciplinary history revealed that he had been convicted of possessing a similar weapon "less than three months prior to the occurrence of this incident." Id. Consequently, the DHO did not credit Allee's allegations that the weapon was not his and that it had been planted in his locker by staff members. Id.

After finding that the prohibited act of possessing a weapon was committed as charged, the DHO imposed the following sanctions: disallowance of 41 days of good conduct time, 30 days of disciplinary segregation, and a 270-day loss of phone privileges. Id. at 3, 5. Allee was advised of his appeal rights, and a USP staff member delivered a copy of the DHO's report to Allee on July 14, 2021. Id. at 5.

## II.    PROCEDURAL HISTORY

On November 19, 2021, Allee filed a petition for writ of habeas corpus under § 2241, alleging that he was denied due process during the disciplinary proceedings. See ECF No. 1-1 at 3–5. He seeks an order requiring prison officials to expunge the incident reports from his disciplinary record and reinstate the disallowed good conduct time. ECF No. 1 at 8.

On February 9, 2022, the respondent filed a motion for summary judgment. The respondent argues that Allee was afforded all of the due process protections required by Wolff v. McDonnell, 418 U.S. 539 (1974), and that there is "some evidence" in the record to support

7

the disciplinary convictions, as required by <u>Superintendent, Massachusetts Correctional</u> <u>Institution v. Hill</u>, 472 U.S. 445, 455 (1985). ECF No. 4 at 10.

Allee filed a response in opposition to the motion for summary judgment on February 24, 2022, in which he addresses the respondent's arguments. <u>See</u> ECF No. 7. Allee also argues the court should deny the motion for summary judgment and permit him to conduct discovery relevant to his assertion that "he was retaliated against or setup, or alternatively, [that] many individuals had access to the area in which the contraband was found . . . ." <u>Id.</u> at 2.

### III.   STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. <u>Tolan v. Cotton</u>, 572 U.S. 650, 657 (2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is only material "if it 'might affect the outcome of the suit under the governing law.'" <u>Libertarian Party of Va. v. Judd</u>, 718 F.3d 308, 313 (4th Cir. 2013) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" <u>Anderson</u>, 477 U.S. at 247–48 (emphasis in original). Likewise, "conclusory or speculative allegations do not suffice" to withstand summary judgment. <u>Thompson v. Potomac Elec. Power Co.</u>, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

## IV.   DISCUSSION

A petition for writ of habeas corpus under 28 U.S.C. § 2241 attacks the execution of a sentence. United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989). The court may grant relief under the statute only if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The burden to show that he is in custody in violation of the Constitution of the United States is on the prisoner." Allen v. Perini, 424 F.2d 134, 138 (6th Cir. 1970).

In this case, Allee claims that his due process rights were violated during the course of both disciplinary proceedings that resulted in the disallowance of good conduct time. In Wolff v. McDonnell, "the Supreme Court recognized that constitutional due process protections extend to prison disciplinary proceedings that could adversely affect an inmate's liberty interests—such as the loss of good time credits at issue here." Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019). The Supreme Court held that an inmate charged with a disciplinary violation implicating a protected liberty interest is entitled the following procedural safeguards: (1) written notice of the charge against him at least 24 hours before a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) a hearing before a neutral and detached hearing body; (4) assistance from a fellow inmate or staff member under certain circumstances; and (5) a written statement describing the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 563-71. Additionally, a finding of guilt that results in the loss of good conduct time must be "supported by some evidence in the record." Hill, 472 U.S. at 454.

A.      **Allee's Request to Conduct Discovery**

Before turning to the motion for summary judgment, the court will first address Allee's

argument that he should be allowed to engage in discovery before the court rules on the

motion. Unlike other civil litigants, a habeas petitioner "is not entitled to discovery as a matter

of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). "Instead, he must show good

cause before he is afforded an opportunity for discovery." Stephens v. Branker, 570 F.3d 198,

213 (4th Cir. 2009) (internal quotation marks and citations omitted). "A showing of good cause

must include specific allegations suggesting that the petitioner will be able to demonstrate that

he is entitled to habeas corpus relief." Id. (citing Bracy, 520 U.S. at 908–09).

Allee has not shown good cause to permit him to conduct discovery in this case.

Although he has identified the specific information that he would like to obtain, "he has not

demonstrated that such discovery would result in him being entitled to habeas relief . . . ." Id.

As previously noted, Allee seeks to conduct discovery relevant to his assertion that "he was

retaliated against or setup, or alternatively, [that] many individuals had access to the area in

which the contraband was found . . . ." ECF No. 10 at 2. In other words, Allee suggests that

discovery will enable him to prove that he did not actually commit the charged offenses.

However, federal habeas review of the evidence to support a disciplinary conviction is

extremely limited. The court assesses only whether there is "some evidence" in the record to

support the DHO's finding of guilt,  and "only evidence that was presented to the [DHO] is

relevant to this analysis." Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992); see also

Alsop v. Stewart, No. 8:19-cv-00971, 2020 U.S. Dist. LEXIS 21345, at *11 (D. Md. Feb. 6,

2020) ("Alsop's effort to present new evidence . . . and new theories of what constitutes

possession are unavailing. The DHO decision was based upon the evidence presented at the time of the disciplinary hearing."). As more fully explained below, it is clear from the record that the finding of guilt in both disciplinary proceedings was supported by "some evidence." Consequently, Allee is unable to demonstrate that the requested discovery would alter the outcome of this proceeding. See, e.g., Arias v. Warden, F.C.I., No. 4:21-cv-2962, 2022 U.S. Dist. LEXIS 111359, at *14–15 (D.S.C. June 22, 2022) (holding that a magistrate judge did not err in denying a petitioner's motion for leave to conduct discovery related to his disciplinary conviction since "the DHO's decision was based on 'some evidence'"). Thus, the court concludes that discovery is unnecessary and that the motion for summary judgment is ripe for disposition.

### B.    Incident Report No. 3465880

In his petition, Allee lists four grounds on which he challenges his conviction for the offense charged in Incident Report No. 3465580: (1) the DHO did not allow him to call a staff member as a witness; (2) "the incident in question is fabricated"; (3) the DHO denied "access to the full investigative findings, most especially of staff retaliation"; and (4) "the weapon was found in a common area—not a controlled circumstance." ECF No. 1-1 at 2. For the following reasons, the court concludes that Allee has failed to show that he was deprived of due process.

### 1.    Failure to  Call Counselor McClellan as a Witness

Allee first alleges that the DHO did not allow him to call witnesses, "especially staff witnesses that had relevant testimony as to the nature of the incident alleged." Id. The record reflects that Allee specifically asked to call Counselor McClellan as a witness, and that his

reason for doing so was to have McClellan confirm that Allee had previously pursued administrative remedies. See ECF No. 4-4 at 1 ("I would request . . . Unit Counselor Mr. Mc[Clellan] . . . . All I request of Staff Witness I-Unit Counselor is confirmation for DHO's knowledge of my filing sensitive BP's over staff misconduct and inappropriate behavior . . . ."). The DHO determined that McClellan's proposed testimony was "repetitive" of other evidence and, therefore, declined to call him as a witness. ECF No. 4-7 at 2.

Although a prisoner has a general right to call witnesses at a disciplinary hearing, that right is not absolute. See Wolff, 418 U.S. at 566–67; accord Ponte v. Real, 471 U.S. 491, 499 (1985) (describing an inmate's right to call witnesses as a "limited one"). In Wolff, the Supreme Court recognized that "[p]rison officials must have the necessary to discretion to keep [a disciplinary] hearing within reasonable limits . . . [by] refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." Wolff, 418 U.S. at 566. Thus, "a prisoner has no right to call witnesses at a disciplinary hearing if their testimony would be irrelevant, repetitive, or unnecessary." Hoskins v. Davis, 66 F. App'x 47, 50 (7th Cir. 2003) (citing Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002)).

During the hearing on Incident Report No. 3465880, Allee presented a written statement alleging that he had previously filed administrative complaints regarding staff misconduct. Allee also had his staff representative and his cellmate confirm that he had previously filed administrative remedy requests. Because Counselor McClellan's proposed testimony would have been repetitive of other evidence presented by Allee, the DHO did not violate Allee's right to due process by declining to call McClellan as a witness. See, e.g., Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007) (explaining that prison officials did not act

improperly by declining to allow a prisoner to call additional witnesses whose testimony would have been cumulative); Larson v. Dretke, 101 F. App'x 433, 434 (5th Cir. 2004) (holding that the absence of cumulative testimony on a particular issue "did not result in a due process deprivation").

### 2.     Failure to Disclose "Full Investigative Findings"

Allee next asserts that he was denied access to the "full investigative findings" related to his allegations of retaliation by prison staff. ECF No. 1-1 at 2. The DHO report indicates that  Allee's allegations of retaliation were investigated by Special Investigative Agent ("SIA") J. Canfield, who determined that there was no credible evidence to support the allegations. ECF No. 407 at 3; see also Decl. of DHO J. Brown, ECF No. 4-1, at 1 ("I did not receive a copy of the SIA's investigation into the matter. I was only informed of the outcome of the investigation, which I documented in the DHO report."). Allee appears to argue that he should have received a copy of any investigative report prepared by SIA Canfield.

While "an inmate has a qualified right 'to call witnesses and present documentary evidence in his defense,'" Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019) (quoting Wolff, 418 U.S. 566), "the Supreme Court has never recognized a broader right to receive all discovery materials prior to a prison disciplinary hearing," Pizzuti v. Baltazar, No. 3:14-cv-00956, 2015 U.S. Dist. LEXIS 5327, at *19 (M.D. Pa. Jan. 15, 2015). Indeed, the Supreme Court has repeatedly emphasized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Ponte, 471 U.S. at 499 (alteration omitted) (quoting Wolff, 418 U.S. at 556). As relevant here, "inmates are not entitled to confront the witnesses against them," Brown v. Braxton,

373 F.3d 501, 505 (4th Cir. 2004), nor are they guaranteed the right to dispute every piece of

evidence. See Lasko v. Holt, 334 F. App'x 474, 476 (3d Cir. 2009) (noting that "[n]otably

absent from the Wolff list of due process rights is a prisoner's right to review all potentially

inculpatory evidence prior to the disciplinary hearing"). Consequently, even assuming that SIA

Canfield prepared an investigative report finding no credible evidence of staff misconduct, the

failure to disclose the report did not deprive Allee of due process. See McMahon v. Tamez,

409 F. App'x 752, 753 (5th Cr. 2011) (rejecting an inmate's contention that "his due process

rights were violated when he did not receive copies of a prison memorandum or e-mail before

or during the disciplinary hearing, [and did not] know of the document's existence until after

he read the DHO's report"); Phelps v. Vannatta, 97 F. App'x 669, 672–73 (7th Cir. 2004)

(holding that prison officials had no duty to disclose a form that was not favorable to the

inmate).

### 3.      Sufficiency of the Evidence

Allee's remaining allegations regarding Incident Report No. 3465880 challenge the

sufficiency of the evidence to support the DHO's finding that he committed the prohibited

act of possessing a dangerous weapon. Allee argues that the incident report was "fabricated"

by the reporting officer and that "the weapon was found in a common area—not a controlled

circumstance." ECF No. 1-1 at 2.

As explained above, a finding of guilt that results in the loss of good conduct time must

be "supported by some evidence in the record" to comport with "the minimum requirements

of procedural due process." Hill, 472 U.S. at 454. "This is an exceedingly lenient standard,

requiring only 'a modicum of evidence' in order 'to prevent arbitrary deprivations without

threatening institutional interests or imposing undue administrative burdens.'" Tyler v. Hooks, 945 F.3d 159, 170 (4th Cir. 2019). The court is not required to examine the entire record, weigh the evidence, or independently assess the credibility of witnesses. Hill, 472 U.S. at 455. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." Id. at 455–56 (alteration in original). "As long as the record is 'not so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary,' courts need not grant habeas relief on this ground." Tyler, 945 F.3d at 170 (quoting Hill, 472 U.S. at 457).

Here, the DHO relied on the incident report and accompanying photographs in finding that Allee committed the prohibited act of possessing a dangerous weapon. The incident report states that the reporting officer personally searched Allee's cell and found a "metal homemade weapon approximately 7 inches in length, grey in color and sharpened to a point, . . . concealed in the back right corner of the cell behind the metal frame of the inmate bunk." ECF No. 4-3 at 1. Although Allee disputes the veracity of the report, the officer's eyewitness account nonetheless constitutes "some evidence" to support the disciplinary conviction. See Boatswain v. Martinez, 536 F. App'x 402, 403 (5th Cir. 2013) ("The district court correctly concluded that the incident report provided 'some evidence' to support the disciplinary conviction. Boatswain's complaint that the disciplinary hearing officer relied on the charging officer's statement alone is essentially a challenge to the credibility of the investigating officer's statement, which this court will not address.") (citations omitted); Stiger v. Warden, Fed. Corr. Ctr. Medium, 389 F. App'x 337, 339 (5th Cir. 2010) ("The written incident report and the supporting photograph were sufficient to provide some evidence of Stiger's guilt. We need

not reconsider the hearing officer's evaluation of the competing statements . . . ."); Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker"); Longstreth v. Franklin, 240 F. App'x 264, 267 (10th Cir. 2007) (holding that an incident report satisfied the "some evidence" standard even though the inmate contested the credibility of the report).

Moreover, the fact that the weapon was found in an unsecured area of the cell that Allee shared with another inmate does not alter the court's decision. "Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits." Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013) (collecting cases); see also Leyva v. Warden, 699 F. App'x 4, 5 (2d Cir. 2017) (concluding that the petitioner's disciplinary conviction for possession of contraband found under his bunk was supported by some evidence despite his assertion that "170 other inmates had access to his cubicle"); McClung v. Hollingsworth, No. 06-6699, 2007 U.S. App. LEXIS 9558, at *10 (4th Cir. Apr. 26, 2007) (declining to hold "that an inmate's unlocked cell, simply by virtue of being unlocked, becomes transformed into a common area akin to a kitchen or television lounge in which the constructive possession rule has no application," and emphasizing that "[t]he Due Process Clause does not require continuous lock-down before allowing punishment for possession of contraband found in inmates' cells").

For these reasons, the court concludes that the DHO's finding of guilt is supported by some evidence in the record and that Allee has failed to establish any procedural due process violation arising from Incident Report No. 3465880.

### C.   Incident Report No. 3489959

Allee also claims that he was denied due process during the disciplinary hearing on Incident Report No. 3489959. He seeks relief on the following grounds: (1) the DHO did not allow him to call witnesses; (2) the DHO did not allow him to have a staff representative; (3) he was "not afforded disclosure of evidence against him"; (4) he was "denied the right to present documentary evidence"; and (5) the DHO's finding of guilt was not supported by sufficient evidence. ECF No. 1-1 at 4–5. The court will address each argument in turn.

#### 1.   Failure to Call Requested Witnesses

Allee first alleges that the DHO did not allow him to call witnesses, "especially staff witnesses that had relevant testimony as to the nature of the incident alleged." Id. at 4. The record reflects that Allee specifically asked to call three staff members as witnesses, including Officer White (the reporting officer), and that he sought to have each requested witness testify regarding a "discussion on 3-11-21 concerning admin[istrative] remedies." ECF No. 4-10 at 1. The DHO determined that the witnesses' proposed testimony regarding administrative remedies "was in no way relevant to the charges [Allee] received for possessing a dangerous weapon on April 2, 2021." ECF No. 4-11 at 2. The DHO also determined that Officer White's knowledge of the incident was adequately summarized in Section 11 of the incident report. Id.

As previously explained, inmates do not have an absolute right to call witnesses at a disciplinary hearing. In Wolff, the Supreme Court recognized that "courts must allow officials

some degree of flexibility to refuse to call witnesses for several reasons," including "because of irrelevance of testimony [or] lack of necessity." Segarra v. McDade, 706 F.2d 1301, 1305 (4th Cir. 1983); see also Wolff, 418 U.S. at 566. Here, the requested witnesses' testimony concerned a conversation regarding administrative remedies that purportedly occurred three weeks before a metal weapon was discovered inside Allee's personal locker. Based on the evidence before the DHO and the witnesses' proposed testimony, the court concludes that the failure to call the requested witnesses did not deprive Allee of due process. See Simpson v. Bledsoe, 378 F. App'x 198, 200 (3d Cir. 2010) (noting that a reporting officer's absence from a disciplinary hearing "would not necessarily result in a due process violation" and that a reporting officer "need not be called" if his knowledge of the incident is adequately summarized in the incident report and other materials supplied to the DHO) (quoting 28 C.F.R. § 541.17(c)); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991) (explaining that "a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony."); see also Brown v. Braxton, 73 F.3d 501, 505 (4th Cir. 2004) (emphasizing that a hearing officer's decision to deny an inmate's witness request is "not to be lightly second-guessed by courts far removed from the demands of prison administration").

### 2.   Failure to Appoint a Staff Representative

Allee also summarily alleges that the DHO did not allow him to have a staff representative at the disciplinary hearing. The DHO's report indicates that Allee "did not request . . . staff representation." ECF No. 4-11 at 1. However, even if Allee made such request, an inmate has no right to a lay advocate "unless he is illiterate or the subject matter is complex." Martin v. Zatecky, 749 F. App'x 463, 466 (7th Cir. 2019) (citing Wolff, 418 U.S. at

570). Here, Allee does not claim to be illiterate. Nor does he assert that the disciplinary charge against him was so complex that he required the appointment of a staff representative. Therefore, the failure to appointment a staff representative did not deprive Allee of due process.

### 3.      Failure to Disclose Evidence

Allee next asserts that he was "not afforded disclosure of evidence against him concerning the Incident Report." ECF No. 1-1 at 4. Aside from this conclusory assertion, Allee fails to set forth any specific allegations to support this claim.  He does not identify any particular evidence that was not disclosed to him.

The record reflects that Allee received a copy of the incident report setting forth the specific allegations against him on April 3, 2021, several weeks before the disciplinary hearing. The incident report advised Allee of the particular offense with which he was charged and alerted him to the specific factual allegations on which it was based. Therefore, the report provided sufficient advance written notice of the disciplinary charge against him as required under Wolff. See, e.g., McCloud v. Lake, 787 F. App'x 483, 483 (9th Cir. 2019) ("The incident report McCloud received described the factual situation that was the basis for the charge and thus adequately performed the functions of notice articulated in Wolff . . . .") (internal quotation marks and citations omitted); Brown v. Wyo. Dep't of Corr. State Penitentiary Warden, 234 F. App'x 874, 878 (10th Cir. 2007) ("[B]y setting forth the offense codes charged, and a brief description of the charged conduct, prison officials provided Brown with sufficient notice to allow him to defend against these charges at the second disciplinary hearing."). Additionally, as noted above, an inmate facing a disciplinary hearing does not have a "right to

review all potentially inculpatory evidence prior to the disciplinary hearing." Lasko, 334 F. App'x at 476; see also Phelps v. Vannatta, 97 F. App'x 669, 673 (7th Cir. 2004) (holding that the failure to disclose documents that "were more likely inculpatory . . . did not violate due process"). Thus, Allee's conclusory assertion that prison officials failed to disclose evidence against him is insufficient to state a cognizable due process claim.

### 4.   Alleged Denial of the Right to Present Evidence

Allee next alleges that he was "denied the right to present documentary evidence of the culture of abuse at USP Lee," including evidence that "staff perpetrated retaliation upon [him]." ECF No. 1-1 at 5. Allee also alleges that he was "denied fingerprint analysis." Id. at 4.

With respect to his claim of retaliation, the record reflects that Allee submitted a written statement alleging that the weapon was planted in his cell as an act of retaliation and that the DHO suspended the disciplinary hearing pending an investigation into Allee's allegations. Allee does not identify any other documentary evidence of "abuse" or "retaliation" that he asked to present at the disciplinary hearing. As a general rule, "if an inmate fails to request access to or consideration of documentary evidence before or during a disciplinary hearing, then prison officials' failure to disclose or consider such evidence does not amount to a denial of due process." Lennear, 937 F.3d at 274–75 (collecting cases from other circuits). Allee's conclusory assertion that he was denied the right to present documentary evidence is insufficient to establish a due process violation. See, e.g., Schlang v. Heard, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case.").

For similar reasons, Allee does not plausibly allege that the denial of a "fingerprint analysis" deprived him of due process. Indeed, there is no indication that a fingerprint analysis was conducted by prison officials or requested by Allee.  As other courts have explained, there is no due process right to have prison officials create evidence that does not exist. See Manley v. Butts, 699 F. App'x 574, 576 (7th Cir. 2017) ("Prison administrators are not obligated to create favorable evidence or produce evidence they do not have."). Thus, even if Allee had asked to have the weapon tested for fingerprints, "[t]here is simply no due process right for [Allee] to demand such a test." Hamilton v. Scott, 762 F. Supp. 794, 802 (N.D. Ill. 1991); see also Pruitt v. Martin, 582 F. App'x 319, 320 (5th Cir. 2014) ("[A]lthough Pruitt asserts that prison officials should have dusted the cell phone for fingerprints . . . , due process does not require that such evidence be presented.") (citing Wolff, 418 U.S. at 563–66); Brown v. McCormick, No. 95-35500, 1996 U.S. App. LEXIS 11073, at *5 (9th Cir. Apr. 29, 1996) (emphasizing that "neither Wolff nor prison regulations mandate that prison officials submit physical evidence for fingerprint testing"). Accordingly, the court concludes that the alleged denial of a fingerprint analysis did not violate Allee's due process rights.

### 5.     Sufficiency of the Evidence

Allee's final allegations regarding Incident Report No. 3489959 challenge the sufficiency of the evidence to support the DHO's finding that he committed the prohibited act of possessing a dangerous weapon. In particular, Allee argues that information in the incident report conflicts with information in a separate property inventory form that was completed the same day. As indicated above, the incident report indicates that the weapon was found in a secured locker containing Allee's property. Allee emphasizes that a notation at

the top of the property inventory form states that certain "property [was] found unsecured." See ECF No. 4-13 at 9.[2] Allee argues that the notation on the property inventory form indicates that his locker was unsecured on the day that his cell was searched.

As explained above, the DHO's decision need only be supported by "some evidence" that Allee possessed a dangerous weapon. Hill, 472 U.S. at 455. The court has no difficulty concluding that this standard is satisfied here. Id. The incident report reflects that Officer White personally discovered a "prison made metal weapon" in Allee's cell, which was over six inches long and had a sharpened point, and that the weapon was located inside the secured bottom locker containing Allee's personal property. Additionally, Allee acknowledged during the disciplinary hearing that the bottom locker belonged to him, and a photograph provided visual evidence of the weapon described in the incident report. Thus, the "record [was] not so devoid of evidence" that the finding of guilty was "without support or otherwise arbitrary." Hill, 472 U.S. at 457. Although Allee now argues that the reporting officer's description of the locker is inconsistent with a notation made on the separate property form, it is unclear from the record whether Allee raised this argument at the disciplinary hearing. And even if he did, the court may not reweigh the evidence considered by the DHO or independently assess the reporting officer's credibility. Hill, 472 U.S. at 455; see also Tigert v. Higgins, 290 F. App'x 93, 101 (10th Cir. 2008) ("[I]t is not our job under the 'some evidence' standard to undertake an independent assessment of the credibility of the witnesses or to weigh the evidence, and we decline to do so.") (additional internal quotation marks and citation omitted). Accordingly,

---

[2] The copy of the form on which Allee relies is largely illegible. See ECF No. 4-13 at 9.

Allee's argument does not alter the conclusion that the hearing officer's decision is supported by "some evidence" in the record. Hill, 472 U.S. at 454.

## V.    CONCLUSION

For the reasons stated herein, the court concludes that there is no genuine dispute as to any material fact and that the respondent is entitled to judgment as a matter of law. Therefore, the court **GRANTS** the respondent's motion for summary judgment and **DISMISSES** the petition with prejudice. An appropriate order will be entered herewith.

Entered: August 29, 2022

Digitally signed by Michael F.
Urbanski        Chief U.S. District
Judge
Date: 2022.08.29 16:57:38 -04'00'

Michael F. Urbanski
Chief United States District Judge